IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:09-CV-0072

| | |
|---|---|
| GOLDTOEMORETZ, LLC, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Memorandum and Order |
| ) | |
| IMPLUS FOOTCARE, LLC, ) | |
|     Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion to Dismiss Defendant's Counterclaim, Defendant's Memorandum in Opposition, and Plaintiff's Reply Brief in Support of its Motion to Dismiss. (Documents #14, #16, #17.) This motion is ripe for disposition.

**I. Background**

This case arises out of the Complaint filed by Plaintiff on June 22, 2009, asserting four claims for relief, including, *inter alia*, trademark infringement and unfair competition. According to the Complaint, Plaintiff is a well-known sock manufacturer and marketer, which sells its products under various proprietary marks. One of those marks, allegedly the subject of U.S. Trademark Reg. No. 2,959,499, (the "Sock Shading Mark") is the focus of this matter. The Sock Shading Mark is described as "a continuous contrasting shaded area" covering the toe and heel areas, and tapering into a "narrow connecting band there between along the arch area and the sole of the sock." (Compl., 2.) Around May of 2009, Plaintiff allegedly learned that Defendant was selling socks bearing Plaintiff's proprietary Sock Shading Mark to retailers. Plaintiff also discovered that Defendant recently hired Jeff Wheeler, Plaintiff's former employee, whose position at GoldToeMoretz, LLC involved overseeing sales of socks bearing the Sock Shading Mark.

1

After learning this information, Plaintiff's counsel allegedly contacted Defendant to insist that the unlawful actions cease and to demand that Defendant provide Plaintiff with certain relevant documents. Although Defendant agreed in its response to stop manufacturing socks bearing the Sock Shading Mark, Plaintiff contends that Defendant refused to consent to other demands, such as recalling all existing inventory and providing information pertaining to sales of the products. When the parties were unable to resolve these issues, Plaintiff filed this action.

On December 22, 2009, Defendant filed an Answer and Counterclaim. (Document #6.) Defendant first argues that Plaintiff's claims are barred by the doctrines of accord and satisfaction, estoppel, waiver, and unclean hands. Moreover, Defendant asserts in its Counterclaim that Plaintiff is pursuing this case in bad faith and that this behavior constitutes unfair competition and an unfair or deceptive trade practice. According to Defendant, prior to this lawsuit, Plaintiff refused or ignored all of Defendant's efforts to resolve this matter amicably, including Defendant's vow to cease production of the allegedly infringing sock and donate the remaining inventory to charity. That unwillingness to cooperate, Defendant contends, demonstrates that Plaintiff's Complaint was "not motivated by any reasonable economic rationale or good-faith desire to protect [Plaintiff's] property rights or to avoid consumer confusion." (Def.'s Answer and Countercl., 6.) Instead, Defendant alleges that Plaintiff initiated the underlying lawsuit solely "to vex, hinder, and harass a competitor in the sock market," in violation of North Carolina law. (Id.)

In response to Defendant's Counterclaim, Plaintiff filed a Motion to Dismiss and Memorandum in Support on February 4, 2010. (Documents #14, #15.) Plaintiff asserts in its first basis for dismissal that its subjective intent in filing the lawsuit – i.e., whether Plaintiff initiated this litigation in bad faith – is irrelevant when determining the sufficiency of Defendant's Counterclaim. According to Plaintiff, while sham litigation may be the basis for a counterclaim under North

2

Carolina law, the mere filing of an objectively reasonable complaint cannot constitute an unfair and deceptive trade practice, regardless of a plaintiff's subjective intent. Hence, Plaintiff argues that because the underlying lawsuit is objectively reasonable, Defendant's Counterclaim must be dismissed for failure to state a claim for which relief can be granted. Alternatively, Plaintiff moves the Court to dismiss Defendant's Counterclaim on the grounds that Plaintiff's pursuit of this lawsuit has not proximately caused a legal injury to Defendant, as required by North Carolina law.

On February 22, 2010, Defendant filed a Memorandum in Opposition to Plaintiff's Motion to Dismiss. (Document #16.) At the outset, Defendant insists that the bad-faith conduct alleged in the Counterclaim is actionable under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") and rejects Plaintiff's assertion that subjective intent is irrelevant to the analysis. Defendant also denies that the underlying lawsuit is objectively reasonable, arguing instead that Plaintiff's Complaint "is *not* meritorious, because it was not reasonably calculated to elicit a favorable outcome, either when it was filed or at any time during [Plaintiff's] bizarre and disjointed six-month pursuit" of this litigation. (Def.'s Memo. in Opp., 13.) Thus, according to Defendant, the Court must deny Plaintiff's motion to dismiss, even if the objective reasonableness of the underlying lawsuit is the central factor in evaluating the Counterclaim.

Lastly, on March 4, 2010, Plaintiff filed a Reply Brief in Support of its Motion to Dismiss, refuting Defendant's arguments against dismissal of the Counterclaim. (Document #17.) In the Reply, Plaintiff restates the reasoning of its prior motion and focuses primarily on its contention that "even if [Plaintiff] had filed this action solely to harass Defendant, such conduct does not constitute an unfair trade practice where, as is the case here, the underlying claim is meritorious." (Pl.'s Reply in Supp., 6.) The dispositive issue in the Court's consideration of the Counterclaim, Plaintiff asserts, is whether the Complaint is meritorious and objectively reasonable. Plaintiff maintains that the

underlying lawsuit meets that standard, and therefore, moves the Court to dismiss Defendant's Counterclaim.

**II. Standard of Review**

A Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a plaintiff's complaint. Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on the motion, the court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." Twombly, 550 U.S. at 555. Accordingly, to survive a Rule 12(b)(6) motion, a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and to satisfy the court that the claim is "plausible on its face." Id. at 555, 570.

**III. Analysis**

In this matter, Plaintiff moves the Court to dismiss Defendant's Counterclaim on two grounds: first, because the Counterclaim fails to plausibly demonstrate that Plaintiff committed an unfair trade practice, and second, because Defendant was not proximately injured by Plaintiff's alleged conduct. The Court's conclusion regarding Plaintiff's principal argument, however, renders consideration of Defendant's injury unnecessary. To state a claim under the North Carolina UDTPA, a plaintiff must allege, "(1) that the defendant engaged in conduct that was in or affecting commerce, (2) that the conduct was unfair or 'had the capacity or tendency to deceive,' and (3) 'that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation.'" Gilbane Bldg. Co. v. FRB, 80 F.3d 895, 902 (4th Cir. 1996) (quoting Pearce

4

v. Am. Defender Life Ins. Co., 343 S.E.2d 174, 179-80 (N.C. 1986)). A trade practice is "unfair" if it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." Marshall v. Miller, 276 S.E.2d 397, 403 (N.C. 1981). And a "deceptive" trade practice is one that "possesses the tendency or capacity to mislead, or creates that likelihood of deception." Forsyth Mem'l Hosp. v. Contreras, 421 S.E.2d 167, 170 (N.C. Ct. App. 1992) (quoting Overstreet v. Brookland, Inc., 279 S.E.2d 1, 7 (N.C. Ct. App. 1981)). Meanwhile, the standard which a plaintiff must meet to state a claim of unfair competition under North Carolina common law "is not appreciably different." BellSouth Corp. v. White Directory Publrs., Inc., 42 F. Supp. 2d 598, 615 (M.D.N.C. 1999) (citing Carolina Aniline & Extract Co., Inc. v. Ray, 20 S.E.2d 59, 61-62 (N.C. 1942)).

The issue here is whether Defendant has sufficiently alleged that Plaintiff engaged in conduct which was "unfair or had the capacity or tendency to deceive," FRB, 80 F.3d at 902 (quotation omitted). In opposition to Plaintiff's motion, Defendant maintains that initiating litigation against a competitor in bad faith and without reasonable justification violates N.C. Gen. Stat. § 75-1.1 and the North Carolina common law. (Def.'s Memo. in Opp., 7.) Yet, while a well-supported allegation that a plaintiff filed a harassing *and meritless* lawsuit may raise a right to relief under the UDTPA "above the speculative level," Twombly, 127 S. Ct. at 1965, Defendant's Counterclaim fails as a matter of law because the Court is satisfied that the underlying lawsuit in this case is not a mere sham.

The North Carolina Court of Appeals has acknowledged that Chapter 75 of the North Carolina General Statutes was modeled after federal antitrust law. Thus, "federal decisions may provide guidance in determining [Chapter 75's] scope and meaning." Reichhold Chems., Inc. v. Goel, 555 S.E.2d 281, 293 (N.C. Ct. App. 2001) (citations omitted). Specifically, that court held

5

in Reichhold that the doctrines governing federal antitrust law announced in E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49 (1993), apply to the North Carolina UDTPA, N.C.G.S. § 75-1.1 et seq. Id. Under Noerr and PRE, a plaintiff may not be held liable for bringing an objectively reasonable lawsuit, regardless of the plaintiff's subjective intent in initiating the litigation. See PRE, 508 U.S. at 60 (holding that "only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation"). It follows, therefore, that a plaintiff may not be held liable in a counterclaim under the North Carolina UDTPA for filing an objectively reasonable lawsuit. See e.g., Reichhold, 555 S.E.2d at 293; First Union Nat'l Bank v. Brown, 603 S.E.2d 808, 819 (N.C. Ct. App. 2004).

A lawsuit is objectively reasonable "[i]f an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome." Reichhold, 555 S.E.2d at 293 (citing PRE, 508 U.S. at 60). Conversely, the institution of litigation may be the basis for a UDTPA counterclaim only if "the lawsuit is a mere sham to cover what is nothing more than an attempt to interfere directly with the business relationships of a competitor." United States v. Ward, 618 F. Supp. 884, 907 (E.D.N.C. 1985); see also PRE, 508 U.S. at 60 (describing "sham litigation" as that which is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"). For the forthcoming reasons, the Court concludes that the Complaint in this matter is not a baseless sham, but rather it is an objectively reasonable lawsuit calculated to elicit a favorable outcome. Accordingly, Plaintiff's initiation of the lawsuit is not actionable under the UDTPA, regardless of Plaintiff's subjective intent in filing its Complaint. See Reichhold, 555 S.E.2d at 293 (affirming summary judgment on the defendant's counterclaim because although the lawsuit was filed "for no legitimate purpose," it "was not utterly baseless," and therefore did not constitute an

unfair trade practice).

An abbreviated review of Plaintiff's trademark infringement claims bears out the objective reasonableness of the Complaint.[1] To recover on a claim for trademark infringement under the Lanham Act, a plaintiff must establish "both that it has a valid, protectable trademark and that the defendant's use of a 'reproduction, counterfeit, copy, or colorable imitation' . . . creates a likelihood of confusion." Petro Shopping Ctrs., L.P. v. James River Petroleum, 130 F.3d 88, 91 (4th Cir. 1997) (quoting 15 U.S.C. § 1114(1)), cert. denied, 523 U.S. 1095 (1998). This second prong – the likelihood of confusion – is the basic test under both the Act and the common law. Spartan Food Sys., Inc. v. HFS Corp., 813 F.2d 1279, 1284 (4th Cir. 1987); see also 15 U.S.C. §§ 1114, 1125.

Here, regarding the existence of a valid trademark, Plaintiff claims exclusive use and ownership of the Sock Shading Mark, a sock design mark that is the subject of U.S. Trademark Reg. No. 2,959,499. (Compl., 2.) And it is well-settled that existence of a registered mark is "*prima facie* evidence of the validity of the registered mark . . ., of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark." Emergency One v. Am. Fire Eagle Engine Co., 332 F.3d 264, 268 (4th Cir. 2003). Consequently, unless Plaintiff's Complaint is entirely lacking in the likelihood of confusion analysis, Defendant's contention that Plaintiff is pursuing "non-meritorious litigation" is unavailing. See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117 (2005) (declaring that "[t]he holder of a registered mark (incontestable or not) has a civil action against anyone employing an imitation of it in commerce

---

[1] In evaluating the plausibility of Defendant's Counterclaim, the Court's inquiry is limited to whether "an objective litigant could conclude that the [underlying lawsuit] is reasonably calculated to elicit a favorable outcome." Reichhold, 555 S.E.2d at 293. Thus, only a brief examination of Plaintiff's primary cause of action is necessary at this stage. For the same reason, this Order should not be interpreted as an endorsement of Plaintiff's claims; the Court's dismissal of Defendant's Counterclaim merely reflects a judgment that the underlying lawsuit is not wholly meritless.

when 'such use is likely to cause confusion'") (quoting 15 U.S.C. § 1114(1)(a)).

Yet, because likelihood of confusion is based on "varying human reactions to situations incapable of exact appraisement," courts view it as an "inherently factual issue that depends on the facts and circumstances in each case." Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 933 (4th Cir. 1995) (quotations omitted). Typically whether the unauthorized use of a mark is likely to confuse an "ordinary consumer" as to the source or sponsorship of the goods is a question reserved for resolution by a jury, which represents a cross-section of consumers. Anheuser-Busch, Inc. v. L & L Wings, 962 F.3d 316, 318 (4th Cir. 1992). Taking that into account, it would be inappropriate at this stage for the Court to make a conclusive determination as to the likelihood of confusion. Howver, it is sufficient for the purposes of this motion to note that Plaintiff's exhibits show substantial similarities between Defendant's Trainer sock and Plaintiff's alleged trademark[2] (Compl., Ex. A, Ex. B). See Microsoft Corp. v. Grey Computer, 910 F. Supp. 1077, 1088 (D. Md. 1995) ("[w]hen the trademark owner and the alleged infringer are in direct competition, it is rarely necessary to look beyond the mark itself to decide if there has been infringement") (citation omitted). Those similarities *could* cause a likelihood of confusion, and that is enough to satisfy the Court that "an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome." Reichhold, 555 S.E.2d at 293.

Accordingly, the Court must reject Defendant's argument to the contrary. Although Defendant's filings focus primarily on Plaintiff's "dilatory and disjointed" (Countercl., 7) pursuit

---

[2] The Court also considered the array of socks manufactured by third-parties, (Def.'s Answer and Countercl., Ex. 3) which Defendant submitted to demonstrate the "scores of competing products that incorporate a design similar to [Plaintiff's] Running sock" (Def.'s Answer and Countercl., 10). While such evidence could show a mark's lack of strength, the Court observed that *none* of those socks incorporated marks nearly as similar to the Sock Shading Mark as Defendant's Trainer sock.

of this lawsuit and the subjective intent that may be drawn from it, Defendant also briefly addresses the objective reasonableness of the underlying lawsuit in its Memorandum in Opposition to Plaintiff's Motion to Dismiss. Defendant there contends that, due to three facts alleged in the Counterclaim – Defendant's minimal profits from sales of the Trainer sock, Defendant's cessation of manufacturing of the Trainer sock, and Defendant's donation of the remaining inventory to charity – Plaintiff's Complaint is inevitably fruitless. Based upon that reasoning, Defendant concludes that the underlying lawsuit "is *not* meritorious, because it was not reasonably calculated to elicit a favorable outcome." (Def.'s Mot. in Opp., 13.) However, Defendant appears to misconstrue profitability as the ultimate measure of a lawsuit's merit. And while the Court "must accept as true all of the factual allegations contained in the [Counterclaim]," Erickson, 551 U.S. at 93-94, the Court is not required to accept Defendant's conclusions derived therefrom.

Undermining Defendant's assertion, where a plaintiff seeks permanent injunctive relief, "it is well established that the voluntary discontinuance of challenged activities by [the] defendant does not necessarily moot [the] lawsuit." Lyon P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 800 (4th Cir. 2001) (citing United States v. Jones, 136 F.3d 342, 348 (4th Cir. 1998)). Plaintiff is requesting a permanent injunction in this case, as well as damages in the amount of Defendant's profits, compensation for losses, and treble damages for Defendant's alleged unfair and deceptive acts. Despite Defendant's minimal profits and temporary cessation of manufacturing, Defendant has not shown that Plaintiff's allegations of damages are wholly baseless.

Irrespective of Plaintiff's motives for filing this suit, the Court is satisfied that Plaintiff's Complaint is not "a mere sham to cover what is nothing more than an attempt to interfere directly with . . . a competitor." Ward, 618 F. Supp. at 907. As discussed above, Plaintiff has filed an objectively reasonable trademark infringement lawsuit. Consequently, Plaintiff's initiation of the

9

lawsuit is not actionable under the North Carolina UDTPA or the common law, and Defendant's Counterclaim must be dismissed for failure to state a claim for which relief can be granted.

**IV. Order**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Dismiss is hereby **GRANTED**. Accordingly, Defendant's Counterclaim is <u>dismissed with prejudice</u>.

Signed: August 31, 2010

Richard L. Voorhees
United States District Judge